# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL |
| VERSUS | NO. 15-076 |
| ERNESTO MORENO | SECTION "L" |

## ORDER & REASONS

Before the Court is Defendant Ernesto Moreno's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. R. Doc. 464. The United States of America filed an opposition to the motion. R. Doc. 474. This case was originally held before Chief Judge Engelhardt, who conducted the Rearraignment and Sentencing hearings. After Chief Judge Engelhardt's elevation to the Court of Appeals for the Fifth Circuit, the case was transferred to Judge Fallon. Having considered the parties' memoranda and applicable law, the Court now rules as follows.

## I. RELEVANT PROCEDURAL BACKGROUND

On June 26, 2017, on the first day of his trial, Defendant Ernesto Moreno pleaded guilty without a plea agreement to Count 1 of the nine-count second superseding indictment. *See* R. Doc. 455 at 3–4. Count 1 charged Defendant with knowingly conspiring "to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, Schedule II drug controlled substance." R. Doc. 455 at 4.

On December 20, 2017, the Court sentenced Defendant to a term of 372 months imprisonment. R. Doc. 437 at 57. This sentence was based on an offense level of 42 and a criminal history category of three. R. Doc. 437 at 53. The offense level was calculated based on the Presentence Report's recommendation of a base level of 36, R. Doc. 437 at 10, with a four-level

enhancement for a leadership role, R. Doc. 437 at 8, and two-level firearm enhancement, R. Doc. 437 at 52. Because Defendant pleaded guilty on the first day of trial, and thus both the government and the Court had expended resources in preparation for trial, the Court did not apply the two-level acceptance of responsibility reduction. R. Doc. 437 at 11.

On December 28, 2017, eight days after Defendant's sentencing, he appealed his sentence to the Fifth Circuit. R. Doc. 434. On February 7, 2019, the Fifth Circuit affirmed this Court's Judgment. R. Doc. 463.

## II. PRESENT MOTION

On March 28, 2019, Defendant filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. R. Doc. 464. In his motion, Defendant claims ineffective assistance of counsel with respect to his guilty plea, sentencing, and direct appeal. R. Doc. 646. Specifically, Defendant claims his attorney was ineffective for the following reasons: (1) advising Defendant to plead guilty, R. Doc. 646 at 5; (2) failing to contest the government's use of time-barred evidence from 2011, R. Doc. 646 at 4; (3) failing to raise the affirmative defense that events that occurred in California and Nashville, Tennessee were improperly included in the Factual Basis in this case in the Eastern District of Louisiana, R. Doc. 646 at 9; and (4) failing to challenge on appeal that there was not a sufficient basis to support Defendant's guilty plea, R. Doc. 464 at 11. On August 22, 2019, the United States of America filed an opposition to Defendant's motion. R. Doc. 474.

## III. LAW AND ANALYSIS

Under 28 U.S.C. § 2255, a prisoner may move the court that imposed his sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255(a). Section 2255 identifies only four bases on which the motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the

sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." *Id.*; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). A claim of error that is neither constitutional nor jurisdictional is not cognizable in a Section 2255 proceeding unless the error constitutes a "fundamental" error that "renders the entire proceeding irregular or invalid." *United States v. Addonizio*, 442 U.S. 178, 186 (1979). The petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982). If the Court finds the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

"[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002). To succeed on a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance was constitutionally deficient, and (2) prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697; *see also United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999) ("A failure to establish either deficient performance or resulting prejudice defeats the claim."). For Sixth Amendment purposes, there is no distinction between retained and appointed counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 344–45 (1980).

For the *Strickland* deficiency prong, counsel's performance is deficient only if it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Scrutiny of counsel's

performance "must be highly deferential" and a fair assessment "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance," and a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (internal citation omitted). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

For the *Strickland* prejudice prong, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. For claims of ineffective assistance of counsel relating to sentencing, the defendant "must demonstrate a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence." *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004) (internal citation omitted).

a. **Whether Defendant's attorney was ineffective in advising him to plead guilty**

For a guilty plea to be constitutionally valid, it must be knowing and voluntary. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir.1989)).

> [A] defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations she made in open court when entering her guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise . . . If the defendant

4

produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue.

*Id.*

Defendant argues he had ineffective assistance of counsel because, if he had known he was at risk for imprisonment for 31 years, he says he would not have pleaded guilty and would have instead proceeded to trial. R. Doc. 464 at 5. According to Defendant, he was told "he would likely receive a maximum sentence of 78 months" if he pled guilty and if he had known he would receive 31 years' incarceration, then he would likely have decided to go to trial instead. R. Doc. 464 at 5.

In evaluating this argument, the Court looks to the transcript of Defendant's Rearraignment on June 26, 2017, which reads, in relevant part:

> THE COURT (Judge Engelhardt): Mr. Moreno, you have had ample opportunity to discuss your case with your attorney prior to today?
> THE DEFENDANT: Yes, sir.
> THE COURT: All right. And you're satisfied with the services of your attorneys in this case?
> THE DEFENDANT: Yes, sir.
> . . .
> THE COURT: All right. If you're convicted of the crime charged in Count 1, either upon a plea of guilty or after a trial, the statutory sentence that could be imposed on you is a maximum term of imprisonment of life, a minimum term of imprisonment pursuant to the statute is 10 years. . . . [y]ou understand that those guidelines are advisory. The Court can impose a sentence on you that is greater or less than the guidelines if the Court determines that the guidelines don't adequately take into account certain facts about you or this particular offense. Do you understand this?
> THE DEFENDANT: Yes, sir.
> . . .
> THE COURT: Has anyone connected with the government or any law enforcement agency or anyone else, for that matter, at any time made any prediction or promise to you as to what your sentence will be, other than to discuss the guideline range and the statutory provisions?
> THE DEFENDANT: No, sir.

R. Doc. 455 at 7, 17, 19. Defendant thus knew he could possibly receive up to a life sentence in prison. Judge Engelhardt also explicitly asked Defendant if he was satisfied with his attorney, if

5

he understood outside facts could be considered in determining his sentence, and if anyone had promised to him what his sentence would be. To the first two questions Defendant responded in the affirmative, and to the last question, Defendant acknowledged no one had promised him a specific sentence.

Moreover, Defendant's attorney stated on the record that he did not guarantee a specific length of sentence to his client:

> THE COURT: You have had a full opportunity to investigate the facts and the law applicable to this case, as well as any possible defenses Mr. Moreno may have to these charges and to advise and counsel him accordingly?
> MR. FUQUA (Counsel): Yes.
> THE COURT: Are you satisfied that he is here today pleading guilty voluntarily and with full knowledge of the consequences of his plea?
> MR. FUQUA: I am.
> THE COURT: Have you made any representations to Mr. Moreno as to what sentence he will receive in this case?
> MR. FUQUA: No.
> THE COURT: Mr. Moreno, have you got any questions about anything I've just asked your attorney or any answers to my questions.
> THE DEFENDANT: No, sir.

R. Doc. 455 at 21.

Based on the above excerpts, Defendant stated he understood he could be sentenced to a maximum of life imprisonment. His sentence of 31 years imprisonment is lower than this maximum. Defendant also said he was satisfied with his attorney and that no one had promised him what his sentence would be. Further, the Court asked Defendant's attorney if he made any representations to Defendant as to what sentence he would receive, and Defendant's attorney replied he had not. Finally, Defendant has not presented any "independent indicia of the likely merits of [his] allegations," such as affidavits from reliable third parties, to indicate his attorney promised him a specific sentence. *See Cervantes*, 132 F.3d at 1110. Therefore, the Court concludes the Defendant has not demonstrated deficient performance by his attorney regarding Defendant's guilty plea.

6

### b. Whether Defendant's attorney was ineffective with respect to the government's use of drug evidence from 2011 at his sentencing

For the *Strickland* prejudice prong, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. For claims of ineffective assistance of counsel relating to sentencing, the defendant "must demonstrate a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence." *Grammas*, 376 F.3d at 439 (internal citation omitted).

When sentencing a defendant, the court may consider conduct underlying a charge—even if the defendant was acquitted on that charge, for example—if it was proven by a preponderance of the evidence. *See United States v. Bolton*, 908 F.3d 75, 95 (5th Cir. 2018) (citing *United States v. Andradi*, 309 F. App'x 891, 893 (5th Cir. 2009)) ("It is well established . . . 'that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.'"). Moreover, a defendant bears the burden of demonstrating that facts contained in his Presentence Report ("PSR") are inaccurate or unreliable. *United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010) (In the instant case, Scher did not provide rebuttal evidence that the district court deemed sufficient to undermine the information in the PSR . . . Scher neither provided the district court with a viable alternative nor demonstrated that the information in the PSR was inaccurate or materially untrue."); *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009) (quoting *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995)) ("The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it.").

Defendant argues he had ineffective assistance of counsel because if his attorney had objected to the government's use of time-barred evidence from 2011 in his factual basis and PSR, then he contends his guideline sentencing range would have been reduced. R. Doc. 464 at 4, 6.

In evaluating the argument, the Court first looks to the Factual Basis in this case. In it, the government states, in relevant part, that if the case went to trial, the government would present credible testimony and reliable evidence to prove the following fact beyond a reasonable doubt:

> Since at least 2011, law enforcement agents in California have been investigating the MORENO family drug trafficking organization (DTO), believed to be trafficking large quantities of methamphetamine and other controlled substances throughout the nation from a source in Mexico. ERNESTO MORENO ("MORENO") is a family member and leader of the DTO.

R. Doc. 320 at 1. Defendant, his attorney, and the Assistant United States Attorney then signed the document on the last page.

Next, the Court looks to the transcript of Defendant's Sentencing held on December 20, 2018, which reads, in relevant part:

> THE COURT (Judge Engelhardt): With regard to defendant objection number two, the Court overrules this objection. Specifically, the defendant argues that the defendant objects to the information contained in Paragraphs 29 through 40 of the revised final draft PSR. The defendant argues the information contained in those paragraphs is beyond the time frame of the second superseding indictment, which was filed on October 8th of 2015. The defendant further argues that while the information in the PSR is from the facts contained within the factual basis of his plea, the information appears to be an opinion with no support.
> 
> The probation officer's response indicates that the information contained in the offense conduct section of the PSR was based on discovery information provided by Assistant United States Attorney James Baehr and the defendant's signed factual basis.
> 
> To date, the defendant has not provided information to suggest the information contained in paragraphs 29 through 40 of the revised final PSR was erroneous or unreliable. As such, it remains as submitted.
> 
> Furthermore, the Court notes that pursuant to sentencing guideline Section 6A1.3, in resolving any dispute concerning a factor important to sentencing determination, the Court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial provided that the information has sufficient indicia of

> reliability to support the probable accuracy.
>
> In United States versus Parker, 133 Federal Third 322, a Fifth Circuit opinion from 1998, the Court found that facts contained in a PSR are considered reliable and may be adopted without further inquiry if the defendant fails to present competent rebuttal evidence. Thus, for this reason, the Court overrules this objection.

R. Doc. 449 at 12–14.

Based on the above excerpt of the Factual Basis, Defendant stated he understood the government's investigation included evidence from 2011 and if the case went to trial, the government had enough to prove that fact beyond a reasonable doubt. R. Doc. 320 at 1. Further, as shown in the excerpt from his Sentencing, Defendant has not demonstrated that the facts contained in his PSR regarding the 2011 investigation are inaccurate or unreliable. *See Scher*, 601 F.3d at 413; *Ollison*, 555 F.3d at 164. Finally, as discussed earlier, Defendant's sentence of 31 years is below the maximum sentence of life imprisonment that he could have received in this case. Therefore, the Court concludes the Defendant has not shown "a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence." *Grammas*, 376 F.3d at 439.

### c. Whether Defendant's attorney was ineffective in failing to raise the affirmative defense of improper venue for some facts stipulated to in the Factual Basis

"Any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of or prosecuted in any district in which such offense was begun, continued or completed." *United States v. Pomranz,* 43 F.3d 156, 158 (5th Cir. 1995) (citing 18 U.S.C. § 3237(a)). Moreover, the Supreme Court has instructed that venue is to "be determined from the nature of the crime alleged and the location of the acts or acts constituting it." *Id*. (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)).

Defendant argues "the drug calculation of the superseding indictment occurred within . . . Louisiana" and venue was therefore improper in that the Factual Basis should not have

included "events that occurred entire[ly] in California and Nashville, Tennessee." R. Doc. 464 at 9. Defendant thus seems to contend that the calculation of methamphetamine for his sentencing should not have included evidence from the events that occurred in California and Tennessee. *See* R. Doc. 464 at 9.

As described earlier, Defendant's Factual Basis states that law enforcement agents in California had been investigating the Moreno family DTO for trafficking in large quantities of methamphetamine and other controlled substances throughout the nation. R. Doc. 320 at 1. Moreover, Defendant and the government agreed and stipulated that Defendant would be "held responsible for at least five hundred grams of a mixture or substance containing methamphetamine" as part of the drug conspiracy for which he pled guilty. R. Doc. 320 at 8. "[Defendant] was responsible for all of the methamphetamine shipped to New Orleans," R. Doc. 320 at 7, so the Court concludes that venue was properly "determined from . . . the location of the act or acts constituting [the crime alleged]," *Pomranz,* 43 F.3d at 158 (quoting *Anderson*, 328 U.S. at 703). But this does not mean that the government was limited to only introducing evidence of drug trafficking that occurred in the Eastern District of Louisiana. Because this offense was committed in more than one district in the United States, the government had the discretion to "inquire[] or prosecute[] [it] in any district in which such offense was begun, continued, or completed." *Pomranz,* 43 F.3d at 158 (citing 18 U.S.C. § 3237(a)).

### d. Whether Defendant's attorney was ineffective on appeal

"Counsel is not deficient for failing to raise every meritorious claim that may be pressed on appeal." *Green v. Johnson*, 116 F.3d 1115, 1125–26 (5th Cir. 1997)). "The proper standard for evaluating a claim that appellate counsel was ineffective for neglecting to file a merits brief is that enunciated in *Strickland v. Washington*." *United States v. Belvin*, No. 11-115, 2013 WL 5557017,

at *2 (E.D. La. Oct. 8, 2013) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). Based on this standard, "the defendant must first show that his counsel was objectively unreasonable in failing to find arguably non-frivolous issues to appeal." *Id.* If the defendant succeeds in meeting his burden on that initial matter, "then he has the burden of demonstrating actual prejudice," which means "he must demonstrate a reasonable probability that but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.* (citing *Smith*, 528 U.S. at 286–87).

Defendant argues his appellate attorney failed to raise a Rule 11(b)(3) issue regarding the "illegal stipulation that was included in the Factual Basis," namely, the "outdated California investigation that was not connected in any form or shape with the 2015 superseding indictment that involved only the Eastern District of Louisiana." R. Doc. 464 at 13.

As discussed earlier, Defendant's claims regarding the Factual Basis are meritless and therefore, his appellate counsel was not "objectively unreasonable in failing to find arguably non-frivolous issues to appeal." *Belvin*, 2013 WL 5557017, at *2. Moreover, Defendant's appellate counsel raised and fully briefed issues relating to the calculation of his advisory guidelines range. *See* Brief of Appellant, *United States v. Moreno*, 760 F. App'x 266 (5th Cir. 2019) (No. 17-31006), 2018 WL 2981240. Therefore, Moreno's sentence and the calculations that went into administering that sentence were brought to the attention of the Fifth Circuit, which subsequently upheld his sentence. *Moreno*, 760 F. App'x at 272. Moreno has thus failed to demonstrate that his appellate attorney's conduct "'fell below an objective standard of reasonableness' pursuant to the first prong of the *Strickland* test." *United States v. Cabrera*, No. 09-317, 2014 WL 1330040, at *5 (E.D. La. Apr. 2, 2014); *see also Belvin*, 2013 WL 5557017, at *3.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Mr. Moreno's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, R. Doc. 464, is **DENIED**.

New Orleans, Louisiana, this 18th day of September, 2019.

                                          ELDON E. FALLON
                                          U.S. DISTRICT COURT JUDGE